IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:02-CR-00992-JFA |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDON L. BASHAM, | ) | **CAPITAL CASE** |
| | ) | |
| Defendant-Petitioner. | ) | |

**PETITIONER'S (Basham) SUPPLEMENTAL MEMORANDUM OF LAW REGARDING THE IMPACT OF *UNITED STATES V. TAYLOR* AND THE FOURTH CIRCUIT COURT OF APPEALS' ORDER IN *UNITED STATES V. DICKERSON* AND *UNITED STATES V. OGUN***

JON M. SANDS
Federal Public Defender

Leticia Marquez
Lindsey Layer
Assistant Federal Public Defenders
407 W. Congress Street, Suite 501
Tucson, Arizona 85701
Tel: (520) 879-7622
Leticia_Marquez@fd.org
Lindsey_Layer@fd.org

*Attorneys for Petitioner*

TABLE OF CONTENTS

I.     Introduction................................................................................1

II.    Procedural and Relevant History.................................................2

III.   Argument ...................................................................................4

      A.   Legal Framework  ...............................................................5

           1.   The definition of "crime of violence".........................5

           2.   The categorical approach .........................................6

      B.   *Taylor* confirms that carjacking resulting in death and kidnapping resulting in death categorically fail to qualify as "crimes of violence" under the force clause of § 924(c)(3)(A)................................................7

      C.   Kidnapping resulting in death does not require the Government to prove the use, attempted use, or threatened use of violent physical force....10

      D.   Carjacking resulting in death does not require the Government to prove the use, attempted use, or threatened use of violent physical force....12

      E.   The Government's interpretation of Section 924(c)(3)(A) would revive the unconstitutional residual clause .................................................15

      F.   Offenses "Resulting in Death" (unlawful killings) Will Not Serve as an End Run Around *Taylor* ........................................................16

      G.   *United States v. Ogun* does not impact Mr. Basham's argument before this court .................................................................................17

      H.   Mr. Basham's claim for relief is not hypothetical...............................19

IV.    Conclusion ...............................................................................19

Brandon Basham, a condemned inmate in the custody of the United States, respectfully submits this Supplemental Memorandum in support of his 28 U.S.C. § 2255 motion pursuant to this Court's orders regarding the impact of *United States v. Dickerson*, *United States v. Ogun* and *United States v. Taylor* on this case. (ECF Nos. 1710, 1717.)

## I.     Introduction

On June 17, 2016, the Fourth Circuit granted Mr. Basham's request to file a successive § 2255 motion based on the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015). (ECF No. 1615.) In his motion, Mr. Basham argued that his 18 U.S.C. § 924(c) and § 924(o) convictions should be vacated because *Johnson* invalidated the statute's "residual clause" and furthermore, his convictions cannot be upheld under the "force clause," therefore he should be resentenced. Thereafter, the Supreme Court through its decisions in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *United States v. Davis*, 139 S. Ct. 2319 (2019), confirmed that *Johnson* invalidated § 924(c)'s "residual clause." The Fourth Circuit did the same in *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019).

The Supreme Court's recent decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022), does not deviate from the rationale of *Johnson* and its progeny and supports Mr. Basham's prior arguments that neither the federal kidnapping statute nor the federal carjacking statute requires the purposeful or knowing use, attempted

1

use, or threatened use of violent force and that neither predicate offense is a crime of violence under the force clause. The Fourth Circuit Court of Appeals' recent decision *United States v. Ogun*, Nos. 16-7450, 20-6578, 2022 WL 843899 (4th Cir. Mar. 22, 2022) (unpublished),[1] does not alter the impact of *Johnson*, and the Supreme Court's subsequent confirming cases, on Mr. Basham's case.

In addition to the arguments set forth herein, Mr. Basham relies on the arguments and authorities set forth in his prior pleadings. (*See* ECF Nos. 1616, 1634, 1669, 1679, 1706.)

## II.    Procedural and Relevant History

In 2004, Mr. Basham was convicted of eight counts, including carjacking resulting in death (Count One) and kidnapping resulting in death (Count Two). *See United States v. Basham*, 561 F.3d 302, 314 (4th Cir. 2009). Mr. Basham was also convicted of possessing or using a firearm during or in relation to a crime of violence as defined by 18 U.S.C. § 924(c) (Count Six) and conspiracy to carry or use a firearm during or in relation to a crime of violence as defined by 18 U.S.C. § 924(o) (Count Five). *Id.*

---

[1] The Fourth Circuit consolidated *United States v. Dickerson*, No. 20-6578 and *United States v. Ogun*, No. 16-7450.

2

The Fourth Circuit Court of Appeals affirmed Mr. Basham's convictions and sentences. *Basham*, 561 F.3d at 339. The Supreme Court denied Mr. Basham's petition for writ of certiorari. *See Basham v. United States*, 560 U.S. 938 (2010).

In 2016, Mr. Basham filed a successive § 2255 motion, based on the Supreme Court's decision in *Johnson*. (ECF No. 1615.) In that motion, Mr. Basham argued that his 18 U.S.C. § 924(c) and § 924(o) convictions, which criminalize the use of firearms during crimes of violence, should be vacated because *Johnson* invalidated the statute's "residual clause" and furthermore, his convictions cannot be upheld under the alternative "force clause," so he should be resentenced.

This Court ordered the case to be stayed pending the Supreme Court's decision in *Dimaya*, and again pending decisions from the Fourth Circuit in *Simms*, and the Supreme Court in *Davis*. (ECF Nos. 1640, 1650, 1653.) The Supreme Court issued its opinion in *Davis* on June 24, 2019, and the Fourth Circuit's mandate issued in *Simms* on July 22, 2019. The Supreme Court in *Davis* followed its reasoning in *Johnson* and concluded, as did the Fourth Circuit, that § 924(c)'s residual clause is unconstitutionally vague and therefore void. This Court further stayed these proceedings pending the Supreme Court's disposition of *Borden* and then pending the Fourth Circuit's opinion in *United States v. Dickerson*, No. 20-6578 and *United States v. Ogun*, No. 16-7450. Before filing a supplemental brief on the impact of *Dickerson/Ogun* on his case, Mr. Basham moved to further stay the proceedings

3

pending the outcome of *Taylor* in the Supreme Court. Subsequently, this Court ordered all parties to submit an optional supplemental brief on the impact of *Dickerson*, *Ogun*, and *Taylor* on this case. (ECF Nos. 1710, 1717)

Mr. Basham files this Memorandum in response to the Court's order. In all other respects, Mr. Basham relies on the arguments and authorities set forth in his prior pleadings.

## III.    Argument

The Supreme Court has held that "[w]ith respect to findings of guilt on criminal charges, the Court consistently has followed the rule that the jury's verdict must be set aside if it could be supported on one ground but not on another, and the reviewing court was uncertain which of the two grounds was relied upon by the jury in reaching the verdict." *Mills v. Maryland*, 486 U.S. 367, 376 (1988) (internal citations omitted). The Court further clarified that "[i]n reviewing death sentences, the Court has demanded *even greater certainty* that the jury's conclusions rested on proper grounds." *Id*. at 376–77 (emphasis added) (citing *Lockett v. Ohio*, 438 U.S. 586, 605 (1978) ("[T]he risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty . . . is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments")).

As the line of cases following *Johnson* have exposed, the "categorical approach" has culminated in increased sentences based on unconstitutional grounds.

4

The *Mills* Court warned that "[u]nless we can rule out the substantial possibility that the jury may have rested its verdict on the "improper" ground, we must remand for resentencing." *Id.* at 377. We cannot rule out this probability in Mr. Basham's case, therefore he must be resentenced.

### A.     Legal Framework

#### 1.     The definition of "crime of violence"

Section 924(c) makes it a crime to use or carry a firearm during and in relation to, or to possess a firearm in furtherance of a "crime of violence." 18 U.S.C. § 924(c)(1)(A). If convicted the offense carries a mandatory minimum of five to ten years, depending on whether a firearm is discharged, and a maximum of life. See § 924(c)(1)(A)(i)-(iii). Section 924(c) sentences must run consecutively to any other sentence. *See United States v. Gonzalez*, 520 U.S. 1 (1997). Section 924(c)(3)(A) defines a "crime of violence" as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." That definition is known as the "elements" or "force" clause.

When enacted, Congress paired the elements clause with a "residual" clause under Section 924(c)(3)(B). That clause was designed to cover offenses that "carrie[d] a substantial risk of" violence sufficient to justify labeling them "crimes of violence," even though they lacked an element bringing them within the scope of Section 924(c)(3)(A). *See* S. Rep. No. 225, 98th Cong. 1st Sess. 307, 313 n.9 (1983).

In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court invalidated the residual clause as unconstitutionally vague. Section 924(c)'s residual clause required courts to estimate "the degree of risk posed by a crime's imagined 'ordinary case.'" *Davis*, 139 S. Ct. at 2326. If the degree of risk was high, the offense was a "crime of violence" within the meaning of Section 924(c). But this approach "provide[d] no reliable way to determine which offenses qualify as crimes of violence and thus [wa]s unconstitutionally vague." *Davis*, 139 S. Ct. at 2324. Whether an offense constitutes a "crime of violence" now turns on the elements of the crime, not on the degree of risk of violence posed in the ordinary case.

### 2.     The categorical approach

In determining whether a crime satisfies the elements clause, a court applies the "categorical approach." *See, e.g.*, *Simms*, 914 F.3d at 234. The categorical approach requires a court to look to the elements of the offense rather than the conduct underlying the conviction. *Mathis v. United States*, 579 U.S. 500, 504 (2016). After determining the elements necessary to sustain a conviction, a court presumes that the conviction "rested upon nothing more than the least of the acts criminalized." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (internal quotation marks and brackets omitted); *see also Johnson (Curtis) v. United States*, 559 U.S. 133, 137 (same, under ACCA's elements clause). This approach has important functions: one goal of the categorical approach is to ensure sentencing uniformity.

*See Taylor v. United States*, 495 U.S. 575, 592 (1990). Another goal is to "promot[e] judicial and administrative efficiency" by avoiding factual "minitrials." *Moncrieffe*, 569 U.S. at 200–01.

An offense does not qualify as a predicate offense unless "the least serious conduct it covers falls within the elements clause." *Borden v. United States*, 141 S. Ct. 1817, 1832 (2021) (plurality opinion); *see also Pereida v. Wilkinson*, 141 S. Ct. 754, 763 (2021) (categorical approach considers whether the "minimum conduct" necessary to violate the statute fits within the relevant category). If the minimum conduct required under the statute does not categorically satisfy the definition of a crime of violence, then that offense is not a crime of violence. Put simply, all means of violating a statute must require proof of use, attempted use, or threatened use of force; if one means of violating the statute does not require such proof, then the statute is not a Section 924(c) predicate. *See Moncrieffe*, 569 U.S. at 191–92.

B.     ***Taylor* confirms that carjacking resulting in death and kidnapping resulting in death categorically fail to qualify as "crimes of violence" under the force clause of § 924(c)(3)(A)**

The question before the Supreme Court in *Taylor* was whether an attempted Hobbs Act robbery[2] was a "crime of violence" that could serve as the predicate crime for a separate conviction under Section 924(c)(3)(A). *United States v. Taylor*,

---

[2] The Hobbs Act makes it a crime to commit, attempt, or conspire to commit a robbery or extortion in a way that impacts interstate commerce. *See* 18 U.S.C. § 1951.

7

142 S. Ct. 2015, 2016 (2022). The Supreme Court held it could not because "no element of attempted Hobbs Act robbery requires proof that the defendant used, attempted to use, or threatened to use force." *Id*. at 2021. The Court held that attempted Hobbs Act robbery is not categorically a crime of violence because no element of the attempted robbery offense requires that the defendant use, attempt to use, or threaten to use force. *Id*.

In *Taylor*, the Supreme Court agreed with the Fourth Circuit that attempted Hobbs Act robbery categorically fails to qualify as a "crime of violence" under the elements/force clause of Section 924(c). The Court accepted that the offense of Hobbs Act robbery can be completed by a threat of force. *See Taylor*, 142 S. Ct. at 2020. In turn, attempted Hobbs Act robbery can be completed by an attempted threat of force (before one actually threatens force)— for example, when one approaches a store with a note in his pocket that says "Your money or your life," which he plans to hand to a cashier to threaten force in exchange for money, but he has not yet delivered. *Id*. at 2021. However, the Section 924(c) force clause, in relevant part, requires an actual threat of force. An attempted threat does not suffice under the clause. Therefore, an attempted Hobbs Act robbery is not a "crime of violence." In so holding, the Court held that no offense that can be completed by the attempted threat of force is a "crime of violence" under the § 924(c) elements clause. *Id*.

8

The Supreme Court posited that the "only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Taylor*, 142 S. Ct. at 2020. "And answering that question does not require—in fact, it precludes—an inquiry into how any particular defendant may commit the crime." *Id*. In determining whether a federal felony offense fits within the Section 924(c) elements clause, the first step of the categorical approach is to isolate the elements of that charged predicate. *See Taylor*, 142 S. Ct. at 2020.

The Supreme Court observed that attempted Hobbs Act robbery contained two elements: (i) defendant intended to take personal property by force; and (ii) defendant completed a substantial step toward that end. *Id*. "To know that much is enough to resolve the case," said the Supreme Court. *Id*. Element (i) requires a showing of a specific intent; "[b]ut an intention is just that, no more," and therefore cannot serve as the requisite element requiring government proof of use, attempted use, or threatened use of physical force as required by the Section 924(c) elements clause. *Taylor*, 142 S. Ct. at 2020. As for element (ii), this requires a showing of a "substantial step" toward the intended object, but "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id*.

9

This reaffirmed that the categorical approach requires courts to "[l]ook at the elements of the underlying crime and ask whether they require the government to prove the use, attempted use, or threatened use of force." *Id.* at 2025.

**C.     Kidnapping resulting in death does not require the Government to prove the use, attempted use, or threatened use of violent physical force**

In a parallel response to codefendant, Chad Fulks' Section 2255 motion, the government stated that "[i]n light of *Borden*, the government presumes without conceding that kidnapping resulting in death no longer qualifies as a predicate crime of violence for purposes of §§ 924(c) and (o)." (ECF No. 1698 at 4.) The government further "acknowledges that [] *Simmons*[3], [] undercuts any argument that kidnapping resulting in death is a crime of violence. *Simmons* rejects the concept that "an 'element' relevant only to an enhanced sentence is necessarily an element of the crime of conviction."" *Id*. at n. 2.

Kidnapping under 18 U.S.C. § 1201 does not categorically require the intentional use of physical force necessary to qualify as a crime of violence under § 924(c)(3)(A). Section 1201(a), in pertinent part, provides:

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when–
> . . .

---

[3] *United States v. Simmons*, 999 F.3d 199 (4th Cir. 2021).

10

The person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense; . . .

shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

18 U.S.C. § 1201(a).

The federal kidnapping statute does not categorically require "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson* (*Curtis*), 559 U.S. at 140. Instead, the crime may be accomplished through non-physical means such as by inveigling, decoying, or "holding," none of which require violent physical force. *United States v. Hughes*, 716 F.2d 234, 239 (4th Cir. 1983) (noting that a kidnapper may "use[] deceit and trickery to accomplish his purpose rather than overt force"). Because kidnapping may also be completed by means of fraud or deception instead of by force, it does not categorically include the element of physical force necessary to qualify as a crime of violence under § 924(c)(3)(A). *See United States v. Fuertes*, 805 F.3d 485, 498–99 (4th Cir. 2015) (concluding that sex trafficking by force, fraud, or coercion is not a crime of violence under either the force clause or the residual clause of § 924(c) because it does not categorically involve physical force).

Because kidnapping resulting in death, has no individual element which requires the intentional use of violent physical force, it fails to qualify as a "crime of violence." *See* Section F *infra*.

> **D.     Carjacking resulting in death does not require the Government to prove the use, attempted use, or threatened use of violent physical force**

Carjacking resulting in death, as defined by 18 U.S.C. § 2119 reads in pertinent part, as follows:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall-- . . .
>
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119. *Borden* requires the use of force to be purposeful or knowing under the terms of the predicate offense's statute if the force clause is to be met. 141 S. Ct. at 1825. The Court concluded that a person must be the "conscious object (not the mere recipient) of the force." *Id*. at 1826. The federal carjacking statute has no requirement that the "force and violence" referred to therein be purposeful or knowing, or that recklessly or negligently applied force be excluded from that requirement. *See* 18 U.S.C. § 2119.

In addition, Section 2119 categorically fails to qualify as a "crime of violence" because it can be accomplished by "intimidation," which 1) does not require the use,

12

attempted use, or threatened use of violent physical force and 2) does not require the *intentional* use, attempted use, or threatened use of the same. This is true even where, as here, the carjacking resulted in the death of the victim.

Federal cases interpreting the federal bank robbery statute (18 U.S.C. § 2113(a)), which has an identical intimidation element, are instructive here. These cases uniformly hold that intimidation occurs when "an ordinary person in the [victim's position] reasonably could infer a threat of bodily harm from the defendant's acts." *United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996); *see also United States v. Pickar,* 616 F.3d 821, 825 (8th Cir. 2010) (same); *United States v. Kelley*, 412 F.3d 1240, 1241 (11th Cir. 2005) (same); *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003) (same); *United States v. Higdon*, 832 F.2d 312, 315 (5th Cir. 1987) (same). No reason exists why this same definition of "intimidation" should not apply here. In fact, Modern Federal Jury Instruction 53A-5 uses this very definition upon noting that "this instruction is adapted from the bank robbery statute, 18 U.S.C. § 2113, which uses the same phrase in an analogous situation." Modern Federal Jury Instructions, Sand and Siffert (2014). Applying this intimidation definition here, carjacking can never qualify as a "crime of violence."

Carjacking resulting in death does not require the use, attempted use, or threatened use of violent physical force. To begin with, the act of placing another in fear of bodily harm, at best, constitutes a threat of physical injury to another, which

13

plainly does not require the use or threatened use of "violent force" against another. The Fourth Circuit's decision in *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012), is directly on point.[4] In that case, the Fourth Circuit unequivocally held that the threat of any physical injury, even "death or great bodily injury," does not necessarily require the use of physical force – let alone "violent force." The Court held that "[a]n offense that *results* in physical injury but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence." *Id*. at 168 (emphasis in original). The additional element that "death results," from the carjacking does not change the analysis. As the Fourth Circuit noted, "[o]f course, a crime may result in death or serious injury without involving use of physical force." *Id.* at 168.

Because "the full range of conduct" covered by the carjacking statute does not require "violent force," it simply cannot qualify as a "crime of violence" under Section 924(c)'s force clause. *Torres-Miguel*, 701 F.3d at 171. Even if violating the carjacking statute without violent physical force is unlikely, because the possibility exists, courts cannot legally find that carjacking is a "crime of violence." "An offense

---

[4] Although *Torres-Miguel* was abrogated by *United States v. Castleman*, 572 U.S. 157 (2014), it did not "abrogate the causation aspect of *Torres-Miguel* that a crime may result in death or serious injury without involving the use of physical force." *United States v. Allred*, 942 F.3d 641, 653 (4th Cir. 2019) (internal citations omitted).

does not qualify as a 'violent felony' unless the *least* serious conduct it covers falls within the elements clause." *Borden*, 141 S. Ct. at 1832 (emphasis in original).

**E.    The Government's interpretation of Section 924(c)(3)(A) would revive the unconstitutional residual clause**

In *Taylor*, the Supreme Court not only mandated the above straightforward categorical approach in the context of the Section 924(c) elements clause, but also expressly rejected a number of proposed alterations thereto. 142 S. Ct. at 2021–26. This Court should similarly reject the arguments that the Supreme Court saw as resuscitating the residual clause. *See Taylor*, 142 S. Ct. at 2023 ("But if the government's view of the elements clause caught on, it would only wind up effectively replicating the work formerly performed by the residual clause, collapsing the distinction between them, and perhaps inviting similar constitutional questions along the way.")

The Supreme Court addressed the government's "alternative, upon alternative" arguments, *Taylor*, 142 S. Ct. 2024, but did not waiver from its position that the element of violence must be enumerated within the elements of the crime. The Court has repeatedly confirmed that pointing to violent commissions of an offense on particular occasions "has no purchase" under the categorical approach. *Borden*, 141 S. Ct. at 1832 (plurality opinion). Under that approach, "the existence of such cases is neither here nor there," because "[a]n offense does not qualify as a "violent felony" unless the *least* serious conduct it covers falls within the elements

15

clause." *Id*. (internal citation omitted) (emphasis original); *Pereida*, 141 S. Ct. at 763 (proper analysis considers "the minimum conduct required to secure a conviction"); *Moncrieffe*, 569 U.S. at 190–91. ("[W]e must presume that the conviction rested upon nothing more than the least of the acts criminalized[.] (citing *Johnson*, 559 U.S. at 137)).

As Justice Thomas observed, the invalidation of ACCA's residual clause in *Johnson* "left prosecutors and courts in a bind. . . . The workaround was to read the elements clause broadly. But the text of that clause cannot bear such a broad reading." *Borden*, 141 S. Ct. at 1834–35 (Thomas, J., concurring in the judgment). Congress may enact a constitutionally sound substitute for the residual clause, or amend the elements clause, but it is not the judicial function to rewrite or reinterpret a criminal statute to compensate for previously invalidated provisions as a means of accommodating the government's interest in covering crimes it believes Congress wanted to reach. *Cf. Davis*, 139 S. Ct. at 2327 (rejecting government's "new 'case-specific'" interpretation of the residual clause).

> **F.     Offenses "Resulting in Death" (unlawful killings) Will Not Serve as an End Run Around *Taylor***

Offenses involving unlawful killings do not automatically satisfy the force clause in crimes where the required element of force is absent. *Borden* clarified that a predicate offense must require the purposeful or knowing use of force, not just

causation of injury. *See Borden*, 141 S. Ct. at 1825–26. Kidnapping resulting in death does not satisfy this requirement.

Kidnapping resulting in death does not exclude death caused without the purposeful or knowing use of violent force. The "death results" provision only requires "but-for causation," there is no requirement of intent or force. *Burrage v. United States*, 571 U.S. 204, 213–14 (2014); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) ("No matter how you slice it, 'if death results' does not mean 'if death was intended.'"); *see also Borden*, 141 S. Ct. at 1827 (commuter endangering pedestrians does not fall withing the elements clause). Indeed, kidnapping resulting in death has been interpreted "broadly" and "requires only that the death of any person results in the course of the kidnapping." *United States v. Montgomery*, 635 F.3d 1074, 1087 (8th Cir. 2011) (internal citations and quotations omitted); *United States v. Barraza*, 576 F.3d 798, 807 (8th Cir. 2009) (kidnapping resulting in death "does not require that the deaths result from voluntary and intentional conduct, only that 'the death of any person results' in the course of the kidnapping.").

### G.    *United States v. Ogun* does not impact Mr. Basham's argument before this court

The Fourth Circuit's consolidated opinions in *United States v. Ogun* and *United States v. Dickerson* do not impact the Court's analysis in this case. In *Ogun*, a panel of the Fourth Circuit, in an unpublished opinion, held that it would "uphold a § 924(c) conviction if it is 'expressly predicated' on at least one offense that

17

categorically qualifies as a crime of violence or drug trafficking crime." *United States v. Ogun*, Nos. 16-7450, 20-6578, 2022 WL 843899, at *2 (4th Cir. Mar. 22, 2022) (unpublished) (citing *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021)).

Importantly, both *Ogun* and the case upon which it relied, *Crawley*, addressed cases in which the petitioner pled guilty to the offense and had admitted to specific conduct in a statement of facts. *Ogun*, 2022 WL 843899, at *1; *Crawley*, 2 F.4th at 260, 261. In *Ogun*, the court found that in determining "which predicate offenses underlie a § 924(c) conviction obtained by a guilty plea, we may look to 'the critical record documents,' which include the indictment, the plea agreement, the statement of facts, and the plea colloquy." *Ogun*, 2022 WL 843899, at *2 (citing *Crawley*, 2 F.4th at 263–64, 267). In *Crawley*, the Fourth Circuit similarly relied on the statement of facts to which the petitioner had agreed, finding it "akin to a 'special verdict identifying the factual bases for conviction.'" *Crawley*, 2 F.4th at 267 (quoting *United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011)).

Here, however, there was neither a plea with an agreed-upon statement of facts, nor a special verdict form. As discussed in prior briefing, in this case jurors were not told they must be unanimous as to which predicate they found, nor did the verdict form specify how many jurors found each predicate. (*See* ECF No. 1706 at 11; ECF No. 1616 at 31; ECF No. 1669 at 10–11.) As such, the Court must determine

whether each predicate constitutes a crime of violence. *United States v. Runyon*, 994 F.3d 192, 201 (4th Cir. 2021). In *Runyon*, only once the court determined that *both* predicate crimes qualified as crimes of violence did it uphold Runyon's convictions. *Id*. at 201–03. Because neither predicate offense here qualifies as a crime of violence under § 924(c)(3)(A), the conviction is not valid.

## H.     Mr. Basham's claim for relief is not hypothetical

The government has argued that Mr. Basham is required to cite an example in which kidnapping resulting in death was upheld without the use of force. (ECF No. 1668 at 32.) The Supreme Court rejected this argument outright, calling a requirement of "placing a burden on the defendant to present empirical evidence about the government's own prosecutorial habits []" an "oddity." *Taylor*, 142 S. Ct. at 2024. The Court also noted the "practical challenges such a burden would present in a world where most cases end in plea agreements." *Id*. It further noted that:

> Congress did not condition long prison terms on an abstract judicial inquiry into whether and to what degree this or that crime poses a risk to community peace and safety. Nor did it mandate an empirical inquiry into how crimes are usually committed, let alone impose a burden on the defendant to present proof about the government's own prosecutorial habits.

*Id*. at 2025.

## IV.  Conclusion

The finding of an element of the use, attempted use, or threatened use of physical force against the person or property of another" is required to qualify under

19

Section 924(c)(3)(A) elements clause. Proposed empirical and other alterations to this straightforward categorical approach are foreclosed under *Taylor*. As a matter of law, the charged predicates fail to qualify as "crime[s] of violence," and hence the Section 924(c) and Section 924(o) convictions must be vacated.

For the foregoing reasons, as well as those set forth in prior pleadings, Mr. Basham respectfully requests that this Court grant his § 2255 motion for relief from his unconstitutional convictions and that his death sentence be vacated, and a new penalty phase be ordered.

Respectfully submitted this 14th day of September, 2022.

> Jon M. Sands
> Federal Public Defender
> Leticia Marquez
> Lindsey Layer
> Assistant Federal Public Defenders
>
> By /s/ Leticia Marquez
> Counsel for Defendant-Petitioner

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2022, I electronically filed the foregoing Petitioner's (Basham) Supplemental Memorandum of Law Regarding the Impact Of *United States v. Taylor* and the Fourth Circuit Court of Appeals' Order in *United States v. Dickerson* and *United States v. Ogun* with the Clerk's Office by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service of this document will be accomplished by the CM/ECF system.


/s/Leticia Marquez
Assistant Federal Public Defender
Federal Public Defender's Office
District of Arizona

21